

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOCAL 73, SERVICE EMPLOYEES )
INTERNATIONAL UNION, AFL-CIO, )
)
Plaintiff, )
)
v. ) Case No. 05 C 2772
)
ARGONNE NATIONAL LABORATORY., ) HONORABLE CHARLES R. NORGLE
and THE UNIVERSITY OF CHICAGO, )
)
Defendants. )

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Plaintiff Local 73, Service Employees International Union, AFL-CIO ("Local 73") brings this Complaint for violations of the Collective Bargaining Agreement ("CBA"), entered into between Local 73 and Defendants Argonne National Laboratory and The University of Chicago ("Defendants"). Specifically, Local 73 alleges that the termination of employees from Defendants' laboratory is a violation of the CBA. The CBA provides that any controversy that falls under the CBA is subject to arbitration. For that reason, the court, *sua sponte*, dismisses the Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

**I. BACKGROUND**

**A. Facts**

Local 73 represents its members in collective bargaining with various employers, and is a labor organization as described under 29 U.S.C. § 152(5). Defendant University of Chicago operates the Argonne National Laboratory. Local 73 and Defendants are parties to the CBA effective from June 16,

1

2001 through June 10, 2005. Article VII of the CBA provides for arbitration:

## Section 7.1 ARBITRATION PROCEDURE

Any controversy with respect to the meaning or application of any provision of this Agreement which has been processed through the grievance procedure and not satisfactorily adjusted in Step Three of the grievance procedure may be submitted for arbitration by the Union by notifying the Laboratory in writing no later than fifteen (15) calender days after the final decision in Step Three of the grievance procedure is communicated to the Chairman of the Union Grievance Committee. The parties shall meet for the purpose of agreeing upon an Arbitrator. If after thirty (30) days following the final action taken in Step Three of the grievance procedure the parties have not agreed upon an Arbitrator, then the Union and Laboratory shall request the American Arbitration Association or the Federal Mediation and Conciliation Service to submit a list of Arbitrators from which they will select an Arbitrator. The proceeding shall be conducted in accordance with the Voluntary Arbitration Rules of the American Arbitration Association provided, however, that in the event of any conflict between said Rule and this ARTICLE, the provisions of this ARTICLE shall govern. The parties shall submit the grievance to be arbitrated in a written stipulation to the Arbitrator. Each party shall bear its respective expenses including one-half of the cost of the reporter, and the expenses and fees incident to the services of the Arbitrator shall be borne equally by the Union and the Laboratory. No employee shall lose pay for time he spends in arbitration hearings during his regularly scheduled working hours.

Furthermore, the CBA expressly states the authority of the Arbitrator:

## Section 7.2 AUTHORITY OF THE ARBITRATOR

The decision of the Arbitrator shall be rendered in writing and shall be final and binding upon the Laboratory, the Union, the employee or employees involved, and all other employees represented by the Union. The Arbitrator may consider and decide only the particular grievance or grievances presented to him in the written stipulation of the Laboratory and the Union, and his decision shall be based upon the facts which are relevant to the Arbitrator's function of interpreting and applying the provisions of this Agreement. The Arbitrator shall not have the right to amend, take away, modify, add to, change or disregard any of the provisions of this Agreement. If the Arbitrator finds that a discharge or suspension imposed by the Laboratory is in violation of this Agreement, or has been applied in a discriminatory manner, he may set aside or modify the particular penalty. In cases of grievances involving loss of time or money, the parties may agree to, or the Arbitrator may order, reinstatement and/or back pay, but in no event shall back pay be awarded for any period of time prior to ten (10) days before the date the grievance was submitted in writing in the Grievance Procedure.

On May 28, 2004, Local 73 filed grievance number 1264 to protest the subcontracting of work normally performed by employees and Defendants' failure to follow contractual procedures for subcontracting. Then, on November 1, 2004, Local 73 filed grievance number 1270, again alleging similar violations of the CBA. According to Plaintiff, Defendants have refused to participate in the selection of an arbitrator.

**B. Procedural History**

On February 22, 2005, grievance 1264 was sent to arbitration, and on March 17, 2006, grievance 1270 was also sent to arbitration. Then on May 9, 2005, Local 73 filed its Complaint. There are no other motions pending before the court.

## II. DISCUSSION

**A. Standard of Review**

*1. Rule 12(b)(3)*

Federal Rule of Civil Procedure 12(b)(3) provides for the dismissal of an action for improper venue. FED. R. CIV. P. 12(b)(3). Under this rule, the court is not "obligated to limit its considerations to the pleadings nor convert the motion to one for summary judgment." Continental Cas. Co. v. American Nat. Ins. Co., 417 F.3d 727, 733 (7th Cir. 2005) (case dismissed because forum selection clause in contract required arbitration). Furthermore, upon "holding an evidentiary hearing to resolve material disputed facts, the district court may weigh evidence, assess credibility, and make finds of fact." Id. (citing Murphy v. Schneider Nat'l Inc., 362 F.3d 1133, 1140 (9th Cir. 2004)). The Seventh Circuit has held that the district court's dismissal of a case under 12(b)(3) due to a valid arbitration clause is appropriate. See Continental Cas. Co., 417 F.3d at 733. "A lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss." Continental Ins. Co. v.

3

M/V Orsula, 354 F.3d 603, 606-07 (7th Cir. 2003).

**B.. The CBA's Arbitration Provision**

As a preliminary matter, the court notes that the overarching issue in this case is the proper venue, not jurisdiction, of this action. The parties are both signatories to the CBA, which was effective between June 16, 2001 and June 10, 2005. The CBA expressly provides for the resolution of all disputes before an arbitrator. See Compl., Ex. A, at 12. The events that gave rise to this cause of action occurred in May and November 2004, within the time period of the CBA.

Additionally, the court notes that "parties that opt for arbitration trade the formalities of the judicial process for the expertise and expedition associated with arbitration, a less formal process of dispute resolution by an umpire who is neither a generalist judge nor a juror but instead brings to the assignment knowledge of the commercial setting in which the dispute arose." Lefkovitz v. Wagner, 395 F.3d 773, 780 (7th Cir. 2005) (internal citations omitted). Arbitration is contractual by nature; "a party can be compelled to arbitrate only those matters that she has agreed to submit to arbitration." Id. at 677 (citing First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 945 (1995); Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1130 (7th Cir. 1997)). "In general . . . issues of interpretation in contract cases should be resolved on the basis of the contract's language in order to minimize the costs and uncertainties of enforcing contracts." In re Comdisco, Inc., - - F.3d - -, 2006 WL 90091, *4 (7th Cir. Jan. 17, 2006). Federal courts have long approved of arbitration as a legitimate form of dispute resolution. See Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673 (7th Cir. 1983).

Pursuant to the Federal Arbitration Act ("FAA"), arbitration may be compelled if the following three elements are shown: "(1) a written agreement to arbitrate, (2) a dispute within the

scope of the arbitration agreement, and (3) a refusal to arbitrate." Zurich American Ins. Co. v. Watts Industries, Inc., 417 F.3d 682, 687 (7th Cir. 2005). "The [Federal Arbitration Act] directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'" BCS Ins. Co. v. Wellmark, Inc., 410 F.3d 349, 351 (7th Cir. 2005) (quoting EEOC v. Waffle House, Inc., 534 U.S. 279, 293 (2002)).

Here, it is undisputed that there is a written agreement to arbitrate, as found in the CBA. See Compl., Ex. A., at 12. Second, the dispute here concerns the procedures and terms found within the CBA; this type of dispute concerns a "controversy with respect to the meaning . . . of [a] provision of this Agreement . . . ." Id. Lastly, there is a refusal to arbitrate, given Local 73's initiation of the current lawsuit, and Defendants refusal to participate in the selection of an arbitrator.

Furthermore, there is a "presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Local 75, Int'l. Bhd. of Teamsters, et al v. Schreiber Foods, 213 F.3d 376, 380 (7th Cir. 2000) (quoting Local Union 1393 Int'l Bhd. of Elec. Workers v. Utilities Dist. of W. Ind. Rural Elec. Membership Coop., 167 F.3d 1181, 1183 (7th Cir. 1999)); see also Welborn Clinic v. MedQuist Inc., 301 F.3d 634, 639 (7th Cir. 2002). The court cannot say with "positive assurance" that the grievances filed by Local 73 are not covered by the arbitration clause in the agreement. Guided by the presumption of arbitrability, the proper venue for this dispute is before an arbitration panel, and not in the United States District Court for the Northern District of Illinois. See Local 75 Int'l Bhd. of Teamsters, 214 F.3d at 380.

5

At the time the parties signed the CBA, they opted to "trade the formalities of the judicial process for the expertise and expedition associated with arbitration." See Lefkovitz, 395 F.3d at 780. There are no ambiguities in the CBA, and the arbitration agreement is expressly stated in plain language. See In re Comdisco, Inc., - - F.3d - -, 2006 WL 90091, at *4. Therefore, because the parties have previously agreed to arbitration, they should not now be allowed to turn their back on that agreement, in favor of litigation in the federal court. See id.

### III. CONCLUSION

For the reasons stated above, the court, *sua sponte*, dismisses the Complaint in this action for improper venue. See FED. R. CIV. P. 12(b)(3).

IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 2-10-06