IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOCAL 73, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, <br><br> Plaintiff, <br><br> v. <br><br> ARGONNE NATIONAL LABORATORY., and THE UNIVERSITY OF CHICAGO, <br><br> Defendants. | Case No. 05 C 2772 <br><br> HONORABLE CHARLES R. NORGLE |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Plaintiff Local 73's Motion for Clarification, or in the alternative, to Reconsider the court's Order of Dismissal issued on February 10, 2006. For the following reasons, Plaintiff's Motion is denied.

## I. BACKGROUND

### A. Facts

Plaintiff Local 73 Service Employees International Union, AFL-CIO ("Local 73") represents its members in collective bargaining with various employers, and is a labor organization as described under 29 U.S.C. § 152(5). Defendant University of Chicago ("U of C") operates the Argonne National Laboratory. Local 73 and Defendants are parties to the CBA effective from June 16, 2001 through June 10, 2005. Article VII of the CBA provides for arbitration:

> Section 7.1 ARBITRATION PROCEDURE
>
> Any controversy with respect to the meaning or application of any provision of this Agreement which has been processed through the grievance procedure and not

1

satisfactorily adjusted in Step Three of the grievance procedure may be submitted for arbitration by the Union by notifying the Laboratory in writing no later than fifteen (15) calender days after the final decision in Step Three of the grievance procedure is communicated to the Chairman of the Union Grievance Committee. The parties shall meet for the purpose of agreeing upon an Arbitrator. If after thirty (30) days following the final action taken in Step Three of the grievance procedure the parties have not agreed upon an Arbitrator, then the Union and Laboratory shall request the American Arbitration Association or the Federal Mediation and Conciliation Service to submit a list of Arbitrators from which they will select an Arbitrator. The proceeding shall be conducted in accordance with the Voluntary Arbitration Rules of the American Arbitration Association provided, however, that in the event of any conflict between said Rule and this ARTICLE, the provisions of this ARTICLE shall govern. The parties shall submit the grievance to be arbitrated in a written stipulation to the Arbitrator. Each party shall bear its respective expenses including one-half of the cost of the reporter, and the expenses and fees incident to the services of the Arbitrator shall be borne equally by the Union and the Laboratory. No employee shall lose pay for time he spends in arbitration hearings during his regularly scheduled working hours.

Furthermore, the CBA expressly states the authority of the Arbitrator:

Section 7.2 AUTHORITY OF THE ARBITRATOR

The decision of the Arbitrator shall be rendered in writing and shall be final and binding upon the Laboratory, the Union, the employee or employees involved, and all other employees represented by the Union. The Arbitrator may consider and decide only the particular grievance or grievances presented to him in the written stipulation of the Laboratory and the Union, and his decision shall be based upon the facts which are relevant to the Arbitrator's function of interpreting and applying the provisions of this Agreement. The Arbitrator shall not have the right to amend, take away, modify, add to, change or disregard any of the provisions of this Agreement. If the Arbitrator finds that a discharge or suspension imposed by the Laboratory is in violation of this Agreement, or has been applied in a discriminatory manner, he may set aside or modify the particular penalty. In cases of grievances involving loss of time or money, the parties may agree to, or the Arbitrator may order, reinstatement and/or back pay, but in no event shall back pay be awarded for any period of time prior to ten (10) days before the date the grievance was submitted in writing in the Grievance Procedure.

On February 10, 2006, the court, *sua sponte*, dismissed the Complaint in this action for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3). Specifically, the court

2

found that the parties had previously agreed to arbitrate any dispute that may arise out of the CBA, and therefore the proper venue for Plaintiff's claims was before an Arbitrator, and not the United States District Court.

**B. Procedural History**

On February 10, 2006, the court dismissed the Complaint for improper venue, pursuant to Federal Rule of Civil 12(b)(3). Then, on February 17, 2006, Local 73 filed its Motion for Clarification, or in the alternative, for Reconsideration of the court's Order. On February 23, 2006, U of C filed its Response, and on March 6, 2006, Local 73 filed its supplemental brief in opposition to Local 73's motion. A review of the court's docket in this matter reveals that four motions are currently pending. Those motions are: (1) Plaintiff's Motion for Stay of Discovery [23-1], (2) Plaintiff's Motion for Protective Order [31-1], (3) U of C's Motion to Dismiss Plaintiff's Motion for Summary Judgment [34-1], and (4) U of C's Motion to Dismiss Argonne National Laboratory [14-1]. Local 73's Motion for Clarification, or in the alternative, for Reconsideration is fully briefed and before the court.

## II. DISCUSSION

**A. Standard of Review**

***1. Rule 59(e)***

Federal Rule of Civil Procedure 59(e) requires that "[a]ny motion to alter or amend judgment shall be filed no later than 10 days after the entry of judgment." FED. R. CIV. P. 59(e). In addition, "entry of judgment is not completed until it is recorded on the docket . . . ." Darne v. Dept. of Revenue, 137 F.3d 484, 486 (7th Cir. 1998).

"The only grounds for a Rule 59(e) motion . . . are newly discovered evidence, an intervening change in the controlling law, and manifest error of law [or fact]." Cosgrove v.

Bartolotta, 150 F.3d 729, 732 (7th Cir. 1998). The rule "requires that the movant "clearly establish" one of the aforementioned grounds for relief." Harrington v. City of Chicago, 433 F.3d 542, 546 (7th Cir. 2006) (quoting Romo v. Gulf Stream Coach, Inc., 250 F.3d 1119, 1122 n. 3 (7th Cir. 2001)). Rule 59(e) "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment . . . or to present evidence that was available earlier." LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir. 1995) (citations omitted); see also Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996). "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995). Whether to grant or deny a Rule 59(e) motion "is entrusted to the sound judgment of the district court." Matter of Prince, 85 F.3d 314, 324 (7th Cir. 1996).

The court notes that Local 73 does not bring this motion under any Federal Rule of Civil Procedure. Although there is no pleading called a "motion to reconsider" in the Federal Rules of Civil Procedure, the court generally construes such requests as being brought under Rule 59(e) or 60(b). See Walker v. Abbott Laboratories, 340 F.3d 471, 475 n.2 (7th Cir. 2003). However, Local 73 fails to cite either Rule 59(e) or 60(b) in support of its motion. This alone is sufficient reason to deny the motion. See United States v. Jones, 224 F.3d 621, 626 (7th Cir. 2000) (noting that an undeveloped argument speaks to its paucity, and that courts are not required to consider such arguments). In this particular instance, after making the appropriate computations, the court finds that Plaintiff's Motion was timely filed with the court within ten days for consideration as a Rule 59(e) Motion to Alter or Amend Judgment. The court reminds counsel that "if a litigant wants the benefit of whatever lower threshold of proof Rule 59(e) may offer, it behooves him to

indicate that his motion is under Rule 59(e)." Harrington, 433 F.3d at 546 (quoting Ball v. City of Chicago, 2 F.3d 752, 760 (7th Cir. 1993)).

### 2. *Rule 12(b)(3)*

Federal Rule of Civil Procedure 12(b)(3) provides for the dismissal of an action for improper venue. FED. R. CIV. P. 12(b)(3). Under this rule, the court is not "obligated to limit its considerations to the pleadings nor convert the motion to one for summary judgment." Continental Cas. Co. v. American Nat. Ins. Co., 417 F.3d 727, 733 (7th Cir. 2005) (case dismissed because forum selection clause in contract required arbitration). Furthermore, upon "holding an evidentiary hearing to resolve material disputed facts, the district court may weigh evidence, assess credibility, and make finds of fact." Id. (citing Murphy v. Schneider Nat'l Inc., 362 F.3d 1133, 1140 (9th Cir. 2004)). The Seventh Circuit has held that the district court's dismissal of a case under 12(b)(3) due to a valid arbitration clause is appropriate. See Continental Cas. Co., 417 F.3d at 733. "A lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss." Continental Ins. Co. v. M/V Orsula, 354 F.3d 603, 606-07 (7th Cir. 2003).

## B.. The CBA's Arbitration Provision

### 1. *Preference for Arbitration*

As a preliminary matter, the court notes that "parties that opt for arbitration trade the formalities of the judicial process for the expertise and expedition associated with arbitration, a less formal process of dispute resolution by an umpire who is neither a generalist judge nor a juror but instead brings to the assignment knowledge of the commercial setting in which the dispute arose." Lefkovitz v. Wagner, 395 F.3d 773, 780 (7th Cir. 2005) (internal citations omitted). Arbitration is contractual by nature; "a party can be compelled to arbitrate only those

5

matters that she has agreed to submit to arbitration." Id. at 677 (citing First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 945 (1995); Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1130 (7th Cir. 1997)). "In general . . . issues of interpretation in contract cases should be resolved on the basis of the contract's language in order to minimize the costs and uncertainties of enforcing contracts." In re Comdisco, Inc., 434 F.3d 963, 968 (7th Cir. 2006). Federal courts have long approved of arbitration as a legitimate form of dispute resolution. See Buckeye Check Cashing, Inc. v. Cardegna, 124 S.Ct. 1204 (2006); Continental Casualty Co., 417 F.3d at 733; Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673 (7th Cir. 1983).

Moreover, "in cases where the parties expand the scope of arbitral authority through their submissions to the arbitrator, it is important to look both at the contract's arbitration provisions and the parties' submissions to determine. . . what authority the arbitrator was given. . . ." Butler Manufacturing Co. v. United Steelworkers of Amer., 336 F.3d 629, 634-35 (7th Cir. 2003) (internal citations omitted). It is presumed that "an arbitrator's authority is broad and 'courts expansively interpret the scope of an arbitrator's delegated authority.'" Amer. Postal Workers Union, AFL-CIO, Milwaukee Local v. Runyon, 185 F.3d 832, 836 (7th Cir. 1999). Therefore, because the parties have "'bargained for' the 'arbitrator's construction' of their agreement . . . courts will set aside the arbitrator's interpretation . . . only in rare instances." Eastern Associated Coal Corp. v. United Mine Workers of America, 531 U.S. 57, 62 (2000).

Despite the fact that arbitration is contractual in nature, the court is also aware that there are five doctrines where a non-signatory, legal entity, can "be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." Zurich American Ins. Co. v. Watts Industries, Inc., 417 F.3d 682,

687 (7th Cir. 2005) (quoting <u>Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.</u>, 293 F.3d 1023, 1029 (7th Cir. 2002)). Therefore, a mere assertion by a party, or third party claimant, that it is not a signatory to the arbitration agreement does not, *prima facie*, negate its duty to arbitrate.

### 2. *Local 73's 59(e) Motion*

Here, Local 73 submits no new evidence, nor cites to any intervening change in the law that would justify the court to grant a Rule 59(e) Motion. See <u>Harrington</u>, 433 F.3d at 546. Nor has Local 73 cited a manifest error of law in the court's Opinion. Local 73 seeks to re-litigate the issue of arbitration under the guise of a 59(e) Motion. Local 73's main argument in support of its motion is that the court's Opinion was "internally inconsistent." Specifically, Local 73's argues that "the Court agreed with the Plaintiff and found that the parties had agreed to arbitrate . . . [H]owever. . . it dismissed Plaintiff's Complaint." Pl.'s Mot., at 3. The fact that the court found the parties had a duty to arbitrate does not lead to the conclusion that the court must issue an order to compel arbitration. It is specifically because the court found a duty to arbitrate between the parties that it dismissed the case for improper venue. None of the reasons submitted by Local 73 are sufficient to grant its Motion under Rule 59(e). The fact that Local 73 seeks to have the court compel arbitration, rather than dismiss the case are insufficient grounds under Rule 59(e). See <u>Harrington</u>, 433 F.3d at 546.

### 3. *The Proper venue for this action is before the Arbitrator*

The court reiterates its Opinion of February 10, 2006, in which it stated that the Seventh Circuit has held that the district court's dismissal of a case under Rule 12(b)(3) due to a valid arbitration clause is appropriate. See <u>Continental Casualty Co.</u>, 417 F.3d at 733. ("The approach makes eminent sense both in terms of the actual substance of the district court's action and in terms of our precedent"). Here, it is undisputed that there is a written agreement to arbitrate, as

7

found in the CBA. Second, the dispute here concerns the procedures and terms found within the CBA; this type of dispute concerns a "controversy with respect to the meaning . . . of [a] provision of this Agreement . . . ." Compl., Ex. A., at 12. As a result, the district court's dismissal of this action makes "eminent sense" both procedurally, and substantively. See Continental Casualty Co., 417 F.3d at 733.

Furthermore, there is a "presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Local 75, Int'l. Bhd. of Teamsters, et al v. Schreiber Foods, 213 F.3d 376, 380 (7th Cir. 2000) (quoting Local Union 1393 Int'l Bhd. of Elec. Workers v. Utilities Dist. of W. Ind. Rural Elec. Membership Coop., 167 F.3d 1181, 1183 (7th Cir. 1999)); see also Welborn Clinic v. MedQuist Inc., 301 F.3d 634, 639 (7th Cir. 2002).

Here, the court cannot say with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Wright v. Universal Maritime Service Corp., 525 U.S. 70, 78 (1998); Local 75, Int'l Bhd. of Teamsters, 213 F.3d at 380. Guided by the presumption of arbitrability, the proper venue for this dispute is before an arbitration panel, and not in the United States District Court for the Northern District of Illinois. See Local 75 Int'l Bhd. of Teamsters, 214 F.3d at 380; see also Continental Casualty Co., 417 F.3d at 733.

At the time the parties signed the CBA, they opted to "trade the formalities of the judicial process for the expertise and expedition associated with arbitration." See Lefkovitz, 395 F.3d at 780. Both Local 73 and the U of C were aware that arbitration is a "less formal process of dispute resolution by an umpire who is neither a generalist judge." Id. Instead, the arbitrator brings "knowledge of the commercial setting in which the dispute arose." Id. Furthermore, there

8

are no ambiguities in the CBA, and the arbitration agreement is expressly stated in plain language. See In re Comdisco, Inc., 434 F.3d at 968; see also Air Line Pilots Ass'n Intern. v. Midwest Exp. Airlines, Inc., 279 F.3d 553, 556 (7th Cir. 2002) ("the party challenging the literal meaning [of the contract] must present objective evidence . . . that the contract does not mean what it says"). Therefore, because the parties have previously agreed to arbitration, they should not now be allowed to turn their back on that agreement, in favor of litigation in the federal court. See Lefkovitz, 395 F.3d at 780; Continental Casualty Co., 417 F.3d at 733.

### III. CONCLUSION

For the reasons stated above, the court denies Local 73's Motion for Clarification or in the alternative, for Reconsideration.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 3/17/06